## TOM COLLINS v. STATE.

No. A-3835.   Opinion Filed Feb. 17, 1923.
On Rehearing, Sept. 17, 1923
(212 Pac. 477, 218 Pac. 183.)

(Syllabus.)

1.  **Larceny—Evidence Sustaining Conviction for Larceny of Automobile.** The evidence in support of the charge of automobile larceny examined, and held sufficient.

2.  **New Trial—Overruling Motion for Newly Discovered Evidence not Erroneous.** The court committed no error in overruling the motion for a new trial on the ground of newly discovered evidence, where such evidence was of doubtful probative force, and the showing of diligence to produce it is wanting or inadequate.

Appeal from District Court, Tulsa County; Redmond S. Cole, Judge.

Tom Collins was convicted of larceny of an automobile, and he appeals. Modified and affirmed on rehearing.

Harvey C. Goodloe, Crossland & Smith, John L. Ward, and D. B. Welty, for plaintiff in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J. Tom Collins, plaintiff in error, was on February 9, 1920, by a verdict of a jury, convicted of the theft of an automobile, and his punishment fixed at eight years' imprisonment in the state penitentiary. From the judgment rendered on the verdict, he appeals. For convenience the plaintiff in error will be designated the defendant.

The defendant urges but two reasons why the conviction should be set aside and a new trial granted: First, that the evidence is insufficient to support the verdict; second, that the court erred in overruling defendant's motion for a new trial on the ground of newly discovered evidence.

The evidence on the part of the state shows that the car in question was a practically new Cadillac car, of the probable value of $3,500; that this car was stolen from the garage of the owner in Tulsa on the night of September 12, 1919; that the car was discovered the next day in an abandoned barn adjacent to a roadhouse some distance from Tulsa; that after the discovery of the car in this barn two officers, in company with persons who knew the car, started to go to this place for the purpose of identifying it; as they were on their way out to the barn another car with three persons in it passed them, going at a high rate of speed; the searching party followed this other car as rapidly as possible, and saw it turn in towards the barn in question; just before it reached the barn a man with union-alls on, afterwards identified as the defendant, came out from hiding in some weeds near by, and got in this car, which immediately turned and started back towards town. The officers stopped the car, took the defendant in charge, and took him into the barn, where they found the car in question, it being easily identified as the stolen car by its brown color and the monogram T. H. C. painted on it. The starting mechanism was found locked, and the wiring to the switch had been tampered with and con-

nected in such a way that the car had probably been run to the place where it was found under its own power. The hood had been removed, and some tools were lying about. Hanging near the side of the car was a top shirt, containing gold cuff links, a size 15½ lay-down collar, and a black four-in-hand tie. The defendant when apprehended did not have on a top shirt, but was wearing working men's union-alls.

At the time of his arrest the defendant denied knowing anything about the car, and stated to the officers and others present that he was just out there hunting for a roadhouse; defendant also denied that the shirt and collar belonged to him. At the trial the defendant took the stand in his own behalf, and testified that on that day he by accident met a man he knew by the name of Pete Prince, who asked him if he could do some wiring on a car; that he replied, in substance, that he thought he could; that Prince then told him where the car was, and the defendant said he would go and see it, and that he was on his way out to see the car for the purpose of doing this wiring when he was arrested. He stated that after making this arrangement with Prince he went to his hotel, and took off his collar and shirt, put on this pair of union-alls over his underclothing, then rode out towards where he was told he would find this car on a jitney as far' as it went, and walked the rest of the distance. It appears that this man Prince was one of the occupants of the car from which the defendant was taken when arrested. This is all we know about Prince; he was not produced as a witness to corroborate or explain any of the circumstances related.

After the defendant was incarcerated in jail the underclothing that he was wearing, with a blurred laundry mark thereon, was deposited in the sheriff's office to be kept as evidence; it was claimed that at least one letter, the letter

"C," found on the collar corresponded to the mark on the underwear, but that the other parts of the mark were so blurred that they could not be positively described. When the case came on for trial this suit of underwear could not be found, and persons in charge of the sheriff's office were unable to state what had become of it.

The testimony at the close of the state's case might have been insufficient to sustain a verdict of conviction, but that testimony, supplemented by the testimony of the defendant and his witnesses, we think was sufficient. The story told by the defendant was in many respects incredible, and could not be reconciled with his statements and conduct at the time of his arrest. In all probability others were implicated with him, but that makes no difference so far as the defendant's case is concerned. Viewing the testimony in all of its aspects, we think the jury were justified in reaching the verdict rendered.

One of the affidavits in support of the defendant's motion for a new trial on the ground of newly discovered evidence was made by a man by the name of Nicholson, who was a prisoner in the county jail, under sentence of conviction for stealing an automobile; in this affidavit he stated that he stole the automobile in question, and that the defendant had nothing to do with the theft; after making this affidavit this witness made his escape from jail, and his whereabouts were unknown at the time of the hearing of the motion for a new trial. Two other inmates of the jail made affidavits concerning statements made by Nicholson in which Nicholson assumed all responsibility for stealing the automobile in question. Considering this alleged newly discovered evidence in connection with the statement of the defendant that he was to alter the wiring on the stolen car for a man by the name of Prince,

a man whose whereabouts was also unexplained, we think the court did not abuse his discretion in overruling the motion for a new trial on the ground of newly discovered evidence. The trial court in the first instance must determine whether the alleged newly discovered evidence is competent, and probably founded in fact; where it appears that it is based on fabricated ex parte affidavits of criminals and fugitives from justice, the court might well hesitate to grant a new trial upon a motion supported by that kind of foundation. Furthermore, there was no sufficient showing that due diligence had been exercised to obtain this testimony before the trial.

The judgment of the trial court is affirmed.

MATSON, P. J., and DOYLE, J., concur.

BESSEY, J. Upon consideration of the petition for rehearing in the above entitled and numbered cause, on this the 15th day of September, 1923, the judgment of the trial court is modified, fixing the punishment of the plaintiff in error at confinement in the penitentiary at McAlester for a period of five years, and the judgment of the trial court is in all other respects ratified and affirmed.